FRANKLIN W. SHERMAN *vs.* MAINE CENTRAL RAILROAD COMPANY.

Lincoln.   Opinion February 4, 1913.

*Approaches.   Exceptions.   Invitation.   Licensee.   Lights.   Negligence.   Nonsuit.   Platform.   Reasonably safe platform.*

October 29, 1907, the plaintiff went to the defendant's station in Wiscasset to see if any freight had arrived, which the lady by whom he was employed, was expecting.   When he arrived at the station, the last train for the day had left the station and the station was in "utter darkness."   In leaving the station, he stepped off the walk connected with the station and was injured.
*Held:*

1.   While it was the duty of the defendant to furnish a reasonably safe platform and approaches to its station and maintain them in a suitable condition for the use of people having business at the station, and for the use of passengers going to and coming from the station, it was not bound to maintain the station and its approaches so that they would be safe after business hours for people who might go upon them in the expectation of seeing some one connected with the railroad after business hours and after the station was closed, if they had knowledge that the station was closed for business.

2.   There was an implied invitation by the defendant to so much of the public as wished to take its trains and to passengers leaving its trains to use the station and its approaches.

3.   It was the duty of the defendant to keep its station and approaches safe for its passengers.

4.   That this implied invitation by the defendant extended to friends who wished to visit the station to see their friends off, or to welcome them upon their arrival, and to persons having business to transact with the defendant at its station.

5.   The putting out of the lights in the station after the departure of the last train for the day at the time of night shown in the case and the closing of the station was notice to every one that business for the day had ceased, and when that notice was given, the implied invitation to people having business with the defendant, or at the station, was withdrawn.

On exceptions by plaintiff.   Overruled.

This is an action on the case to recover damages for personal injuries occasioned by the alleged negligence of the defendant, at

its station in Wiscasset, on the 29th day of October, 1907. Plea, the general issue. At the close of the plaintiff's evidence, the presiding Justice ordered a nonsuit and the plaintiff excepted.

The case is stated in the opinion.

*C. L. Macurda, and A. S. Littlefield,* for plaintiff.
*White & Carter,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, HALEY, JJ.

HALEY, J. This is an action on the case, in which the plaintiff seeks to recover damages for injuries sustained by him, at defendant's station at Wiscasset, by reason of the alleged negligence of the defendant. At the close of the testimony the presiding Justice ordered a nonsuit, and the case comes before this court on exceptions to that ruling.

October 29, 1907, the plaintiff, who had recently moved to Wiscasset, attended an evening session of the court at that place. The court adjourned before the arrival of the evening train, which was due to arrive at 7.15 P. M., and which was the last passenger train that night. The plaintiff, after leaving the court room, heard the engine whistle, and thought he would go to the railroad station, and ascertain if certain goods, that the lady who employed him was expecting by freight, had arrived. It was a dark, misty night. The plaintiff saw the train pass over the Main street crossing when he was from a third to a quarter of a mile, the way he was traveling, from the railroad station. At that time the train was 834 feet from the station. The plaintiff passed down the sidewalk on Main street, turned and walked up Water street to a cross street leading to the station, then down the cross street to the railroad station. While on the cross street he was on the side of a hill and the railroad buildings were directly in front of him. There were no lights in the station, the plaintiff testified that the station was in utter darkness, and the freight office was closed, and that he met no teams or people coming from the station. He approached the station on the side farthest from the railroad track, that is, on the back side of the station. The platform, or walk around the station, at the point where he approached it, was three feet above the ground. At the point where

the plaintiff reached the platform there were stairs from the ground to the platform; and he went up the stairs on to the platform, walked nearly the length of the building, on the back side, then went through the passageway between the waiting room and the baggage room, then down in front of the building to the baggage room door, which was locked, as were the other doors of the buildings. He then turned and walked back the same way he came, and, when he arrived at the point where he thought the stairs were, he stepped off the platform, fell to the ground and fractured the fibula and the internal malleolus of his left leg, which are the injuries for which he claims damages in this case.

It is the claim of the plaintiff that it was the duty of the defendant to have its platform from which he stepped railed or lighted, and, that if it had done either, he would not have stepped off the platform, and sustained the injuries complained of.

It is not questioned but that there was an implied invitation by the defendant to so much of the public as wished to take its trains, and to passengers leaving its trains, to use the station and its approaches, and that it was its duty to keep its stations and approaches safe for its passengers, and this implied invitation was extended to friends who wished to visit the station to see their friends off, or to welcome them upon their arrival, and to persons having business to transact with the defendant at its stations. The defendant owed a duty to all such persons, by reason of this implied invitation. But while it was the duty of the defendant to furnish a reasonably safe platform and approaches to its station, and to maintain them in a suitable condition for the use of people having business at the station, and for the use of passengers, going to and coming from the station, it was not bound to maintain the station, and its approaches, so that they would be safe after business hours for people who might go upon them in the expectation of seeing some one connected with the railroad after the station was closed, if they had knowledge that the station was closed for business. The putting out of the lights after the departure of the last train for the day, at the time of night shown by the evidence in this case, and the closing of the station, was notice to every one that business for the day had ceased, and, when that notice was given,

the implied invitation to people having business with the defendant, or at the station, was withdrawn, and it was not the duty of the defendant to keep its platform and the approaches thereto safe for those who then chose to go upon them.    The plaintiff knew the conditions, for after seeing the last train of the evening cross Main street, he walked in the dark from one-quarter to a third of a mile to the station, which must have taken him at least fifteen minutes when the train would ordinarily have left the station in five minutes from the time he saw it and he knew it was the last train for that day, and before he got to the cross street leading to the station, all passengers and teams had left the station, and he testified that the station was in utter darkness, but that he thought he might find the station agent in his private room.    But, with the station in utter darkness, he should have known that business for the day was over, and the invitation to use the platform and its approaches was withdrawn.    When he went upon the platform under those conditions, it was without invitation, and he had, at the most, no more than the rights of a mere licensee, and the defendant was not obliged to furnish lights and railings to guide and protect him, for the defendant owed him no duty except the negative one of not doing anything to injure him, if it knew of his presence there, for a bare licensee must take the premises as he finds them, and the owner is not liable for a danger that is only concealed by the darkness of night.    *Reardon* v. *Thompson,* 149 Mass., 267.

*Exceptions overruled.*